# SUMMONS

Rule 4 1970 Ohio Rules of Civil Procedure

Medina County Court of Common Pleas, 93 Public Square, Medina, OH  44256

Case No. **22CIV0848**
JUDGE JOYCE V. KIMBLER

To:  **VILLAGE OF SEVILLE
120 ROYAL CREST DR
SEVILLE, OH  44273**

You have been named a defendant in a Complaint filed in the Medina County Court of
Common Pleas by the following plaintiff: MICHELLE  RIEG.  A copy of the Complaint
is attached hereto W/ EXHIBITS .

You are hereby summoned and required to serve a copy of your Answer to the Complaint
upon the plaintiff's attorney, or upon the plaintiff if there is no attorney of record, within
**twenty-eight (28) days** after service of this Summons upon you, excluding the date of
service.  Your Answer must be filed with the court within **three (3) days** after service of
a copy of the Answer on the plaintiff's attorney, or upon the plaintiff if there is no
attorney of record.

The name and address of the plaintiff's attorney is as follows:

**JEFFREY T WITSCHEY
WITSCHEY WITSCHEY & FIRESTINE CO
405 ROTHROCK RD STE 103
AKRON, OH 44321**

Failure to appear and present a defense to the Complaint will result in a judgment by
default being rendered against you for the relief demanded.



October 20, 2022

**DAVID B. WADSWORTH
CLERK OF COURTS**

By: **MB,** Deputy Clerk

**IN THE COURT OF COMMON PLEAS**
**MEDINA COUNTY, OHIO**

COMMON PLEAS COURT

2022 OCT 19 PM 3:12

FILED
DAVID B. WADSWORTH

|  |  |
|---|---|
| MICHELLE & BRIAN RIEG<br>148 Royal Crest Drive<br>Seville, Ohio 44278 | )<br>)<br>)<br>) | CASE NO. ___22CIV0848___ |
| **and** | )<br>)<br>) | |
| SCOTT & ROBIN WANGLER<br>8196 Hubbard Valley Road<br>Seville, Ohio 44273 | )<br>)<br>)<br>) | JOYCE V. KIMBLER, JUDGE<br><br>JUDGE _____ |
| **Plaintiffs** | )<br>)<br>) | **PLAINTIFFS' COMPLAINT FOR**<br>**DECLARATORY JUDGMENT;** |
| **v.** | )<br>)<br>) | **INJUNCTION; VIOLATION OF**<br>**PROCEDURAL AND**<br>**SUBTANTIVE DUE PROCESS** |
| VILLAGE OF SEVILLE<br>120 Royal Crest Drive<br>Seville, Ohio 44273-9573 | )<br>)<br>)<br>) | **AND EQUAL PROTECTION**<br>**UNDER THE LAW; VIOLATION**<br>**OF SECTION 42 U.S.C. 1983;**<br>**VIOLATION OF THE** |
| **Defendant.** | )<br>)<br>) | **CONSTITUTION OF THE STATE**<br>**OF OHIO** |

JURY DEMAND ENDORSED HEREON

\*\*\*

NOW COMES Plaintiffs, Michelle & Brian Rieg and Scott & Robin Wangler (collectively, "Plaintiffs"), and by and though their undersigned counsel and allege as their complaint against Defendant, the Village of Seville (Seville), for declaratory judgment, injunction, damages, and other requests for relief:

**INTRODUCTION**

1. Plaintiff, Michelle and Brian Rieg (the "Riegs"), are residents of Medina County, Ohio residing at 148 Royal Crest Drive, Seville, Ohio. The Riegs own their residence (the "Rieg Residence") and a description of the same is attached hereto as Exhibit A.

2. Plaintiff, Scott Wangler and Robin Wangler (the "Wanglers"), are residents of Medina County, Ohio residing at 8169 Hubbard Valley Road, Seville, Ohio. The Wangler's own their residence (the "Wangler Residence") and a description of the same is attached hereto as Exhibit B.

3. Defendant, the Village of Seville ("Seville"), is a municipal corporation, located in Medina County, Ohio organized and existing under the laws of the State of Ohio.

4. Certain parcels of property in Seville, Ohio further described in Exhibit C were purchased by and are currently owned by NEO Commerce Center LLC. The parcels shall hereinafter be referred to as the "Flint Property."

5. Flint Development, LLC ("Flint") is a builder and developer of massive industrial warehouse and product distribution hub facilities and has applied to Seville for and requested approval of an industrial warehouse and distribution hub facility on the Flint Property.

6. The Flint Property is zoned as R-1 Low Density Residential under The Village of Seville Zoning Ordinance Code Book (the "Zoning Code"). It also lies within Seville's "Mixed Use Overlay District (MU)" which is codified in §611, et seq. of the Zoning Code ("Mixed Use Overlay District").

7. In 2019, Seville adopted a Comprehensive Plan that identified the need for mixed use overlay districts within Seville. Subsection 5 of the Comprehensive Plan expressed the purpose of the Mixed Use Overlay District and included the Flint Property as an example:

The vision of this type of zoning [mixed use] is to **create a community of uses that overlap**. These uses, commercial, light industrial, and residential should **complement each other, but not make a major change to the underlying zoning**. For example, along the east side of the Route 3 corridor north of Greenwich Road [referring to the Flint Property], the development of retail and offices could be complemented by high density residential apartment/condominium living over the retail and office areas. Industrial could be developed further to the east. **Each component complements the other while not relying heavily on a single use**.

8. Subsection 5 of the Comprehensive Plan finished by stating: "The zoning code should be revised to further clarify the intended use of this type of zoning in the village."

9. The Zoning Code was thereafter so revised. §611 of the Zoning Code provides in Subsection 611.01, the very first provision in the Mixed Use Overlay District, the purpose of the Mixed Use Overlay District. It states:

The purpose of this district is to require a mix of at least two industrial retail, service, office, high density housing and public activities to coexist **in a manner that reflects human scale and emphasizes pedestrian orientation, taking advantage of the vitality that mixed uses can bring to a community**. Mixed Use Overlay Districts can serve both local and regional industrial and commercial needs, **while reflecting the scale and character of the Village of Seville in a manner that protects adjacent areas from any adverse effects**.

10. The next 12 pages of the Zoning Code then sets forth restrictions which advance the spirit of the Mixed Use Overlay District and its express purpose, carefully restricting such developments to ensure the development creates a community of overlapping uses, does not make major changes to the underlying zoning, reflects the character of Seville, and protects adjacent areas from any adverse effects – just as the Comprehensive Plan suggested.

11. Flint intends to construct three large industrial warehouses containing more than one million square feet of floor space and 270 truck loading docks, on the Flint Property (the "Flint Development").

Page 3 of 23

12. The Flint Development flagrantly violates both the spirit of the Mixed Use Overlay District and the expressly written purpose of the same as expressed in sub-section 611.01. The Flint Development site plan then brazenly and manifestly violates nearly every applicable requirement and restriction the Zoning Code provides for in the district.

13. The Rieg Residence is in the neighborhood adjoining the Flint Property and is in the immediate vicinity of the Flint Development.

14. The Wangler Residence is directly adjoined to the Flint Property and Flint Development.

15. On or about April 25, 2022, the Board of Zoning Appeals denied Flint's application for a zoning variance to exceed the maximum height allowed in the Mixed Use Overlay District.

16. Immediately after the denial, on April 25, 2022, a representative from Flint sent an email to the mayor, engineer, and zoning inspector for Seville and the executive director of the county's economic development corporation and informed them that Flint would have to take the development to another city since Flint's variance was denied.

17. In the days following that email, the executive director of the county's economic development corporation emailed Seville's mayor, inquiring about what the zoning appeal process is and informing the mayor that she estimated over Five Million Dollars of income for Seville over a 20-year period if Flint builds the Flint Development in Seville.

18. On or about May 6, 2022, a shareholder of Flint sent and email to various decision-makers for Seville, including the mayor and the village solicitor, red-lined set of revisions to the Zoning Code for Flint's desired changes, "consistent to their previous conversation" with the mayor.

19. Zoning Code Section 1407.01 allows for an appeal of a variance decision by the Board of Zoning Appeals within twenty (20) days of the decision being filed with the zoning inspector.

20. Flint did not file an appeal on the denial of their application for a zoning variance.

21. Instead, it sought amendments to the Zoning Code raising the maximum height of a building in the Mixed Use Overlay District from 35 feet to 55 feet, relaxing the sound emanation restrictions in the district, and allowing Seville's Planning Commission (the "Planning Commission") to "waive" or allow "accommodations" to the extensive requirements and restrictions in the Mixed Use Overlay District and do so without providing any standards or criteria that need met before such waivers or accommodations could be granted (the "Amendments").

22. Specifically, the Amendment added this language to the Mixed Use Overlay District: "During the site plan review process the Planning and Zoning Commission may approve reasonable waivers and accommodations in the Zoning Code development standards and design principals necessary for reasonable development of the Mixed Use Overlay District."

23. The Amendment also changed the previous sound restriction of Section 611.07(B) from a provision that protected neighboring properties: "There shall be no production of noise at any MU Overlay District boundary of any use in excess of the average intensity of street and traffic noise found in the adjacent area" to one that provided almost no protection: "There shall be no production of noise at any MU Overlay District boundary of any use in excess of the average intensity of such particular use as measured by commercially reasonable industry standards." This Amendment gutted any noise production protection that Section 611.07 (B) once provided neighboring landowners and residents. The statute now allows as much noise as a particular industry normally makes regardless of the development's context within the vicinity of neighboring properties.

24. The Amendments were set for a Planning Commission meeting and recommendation on or about May 23, 2022.  Representatives from Flint appeared and spoke in favor of the Amendments at the Planning Commission and spoke about the specific development plans.

25. Also at this meeting, several neighborhood homeowners, including some of the Plaintiffs here, spoke against the Amendments and the Flint Development identifying violations of the Mixed Use Overlay District provisions, stating concerns of health effects, excessive sound, environmental issues, unreasonable traffic increases, drainage problems and loss of value to their own properties.

26. Mr. Wangler compiled a list of violations of the Zoning Code based on Flint's design and site plan and indicated to the Planning Commission there were 32 violations.

27. Planning Commission recommended all the Amendments.

28. Seville Ordinance 2022-40 ("Ordinance 2022-40") which included all the Amendments was scheduled for its first Village Council reading at its meeting on June 13, 2022. Ordinance 2022-40, including all the Amendments, is attached hereto as Exhibit D.

29. The portion of the Zoning Code regarding the Mixed Use Overlay District is comprised of 13 pages of regulations meant to ensure that the intention and purpose of the Mixed Use Overlay District is upheld, only small changes from the current zoning occur, "commercial, light industrial, and residential" uses are overlapped so that they coexist in a manner that reflects human scale and emphasizes pedestrian orientation, and to accomplish the same without changing the "scale and character" of Seville all the while protecting adjacent areas from any adverse effects.

30. The Amendments contained in Ordinance 2022-40 were "handouts" to Flint. They increased the allowed sound intensity in the Mixed Use Overlay District to accommodate sounds emanating from the development which were, by Flint's own admission, as much as twice those of the ambient sounds emanating from the neighboring developments, it increased the maximum height of buildings to the exact height that Flint had requested in their variance application, and it allowed the Planning Commission to waive or provide accommodations to the standards, restrictions and design principals of the Mixed Use Overlay District without the guidance of any standards or criteria for their decisions.

31. In effect, Ordinance 2022-40 obviated the need for the normal variance procedure and the application of that procedure's strict requirements normally used to protect neighboring properties and needed before a zoning restriction could be relaxed or eliminated for an applicant.

32. Ordinance 2022-40 gave the Planning Commission absolute, arbitrary, capricious, and despotic control over the zoning in the Mixed Use Overlay District.

33. In pure effect, Ordinance 2022-40 delegated legislative authority over the zoning of the Flint Property to Planning Commission, an administrative, not legislative body.

34. Ordinance 2022-40 included language that made it an emergency measure so it would bypass the normal legislative requirements and go into immediate effect.

35. By law the emergency language would also preclude the citizens from utilizing the referendum process, a fact which the Village Engineer advised the Mayor and Flint.

36. Additionally, the authority extended to the Planning Commission to make waivers and accommodations to zoning requirements only applies in the Mixed Use Overlay District, where the Flint Development would, indeed, need waivers or extensive accommodations for nearly every restriction and design requirement included in the Mixed Use Overlay District.

37.  Because this delegation of legislative authority to Planning Commission only applies to the Mixed Use Overlay Districts, owners of properties neighboring Mixed Use Overlay Districts are denied the equal protection of law (namely the variance process) that other land owners are provided as it relates to development of properties neighboring other districts.

38. On or about June 13, 2022, at a public hearing, Mrs. Rieg questioned the propriety of emergency language in Ordinance 2022-40.

39. Village Council did not give her an answer.

40. Again, a resident speaker questioned the use of emergency language.

41. The Village Solicitor said the reasoning for the emergency declaration was the "economic development of the Village."

42. Someone else noted that the Ordinance 2022-40 contained "zero criteria" for the Planning Commission to grant waivers or accommodations.

43. Mrs. Wangler asked the Seville Village Council to define "reasonable" as it was used in the Ordinance.

44. The Council did not respond to these questions, instead it offered what the Seville Village Council intended to do with the additional revenue it expected to make from the Flint Development.

45. Regardless of how many residents asked about guidelines, regardless of concerns of the health and wellbeing of the citizens, the Seville Village Council passed Ordinance 2022-40 as an emergency measure preventing the use of a referendum procedure to revoke the ordinance.

46. Ordinance 2022-40 is arbitrary and unreasonable and lacks any relation to the health, safety, morals, or general welfare of the community; the Council acted in accordance only with Seville's economic desire.

47. The effect of Ordinance 2022-40 allowed the Planning Commission the freedom to "waive" and "accommodate" any or all of the Flint Development site plan's numerous, direct, and flagrant violations of the Mixed Use Overlay District's restrictions and design constraints and allow a site plan in no way compatible with the spirit and express purpose of the Mixed Use Overlay District.

48. Ordinance 2022-40 is in violation of constitutional guarantees provided by both the Ohio and the United States Constitutions.

49. The Riegs and Wanglers have been stripped of their constitutional substantive and procedural due process rights via the enactment of the facially invalid and unconstitutional Ordinance 2022-40.

50. On or about June 24, 2022, a Zoning & Planning Commission member referred to the Flint Development as an industrial use and admitted in an email "the Village has already gone above-and-beyond for this development by changing the code to allow the taller buildings in the MU Overlay District. That type of district is not the same as an Industrial district and it was never intended to be. When you get right down to it, I don't think this project meets the intent of a mixed use district any more than the Ryan home development does. Where is the "mixed use" in either development? However, like I said, I'm still for getting the project put thru…"

51. On or about June 27, 2022, the Flint Development site plan was presented to Planning Commission. Again, the Wanglers and Riegs appeared and objected.

52. Despite the fact that the Flint Development site plan flagrantly and directly violated numerous provisions in the Mixed Use Overlay District, the site plan received preliminary approval from Planning Commission.

53. At a Council meeting on July 11, 2022, Rieg asked the Council why all ordinances concerned with the Flint Development included emergency language.

54. Mayor Carter did not answer directly, saying that there were also other ordinances with emergency language.

55. At the same meeting, Ordinance No. 2022-47 was proposed. This ordinance authorized the mayor to enter into a Community Reinvestment Area Agreement with Flint, and it declared an emergency.

56. On or about September 19, 2022, Flint presented its final site plan to the Planning Commission.

57. Prior to the meeting, the attorney for the Riegs and Wanglers, on their behalf, e-mailed to Seville's solicitor a comprehensive statement in opposition to Ordinance 2022-40 and the Flint Development site plan and requested the solicitor forward the same to the Planning Commission members. The attorney also submitted hard copies of the statement to each of the Planning Commission members at the meeting. The e-mail and statement (the "Objection Statement") are attached here as Exhibit E.

58. The Objection Statement in clear and concise terms explained how the development flagrantly violated the purpose and spirit of the Mixed Use Overlay District zoning and directly and manifestly violated nearly ever restriction contained in §611 of the Zoning Code.

59. Immediately after the presentation by Flint Development, the Planning Commission voted on the final site plan prior to taking any other evidence or even comments from those who showed to object to the plans and willfully ignored the extensive grounds for objection contained in the Objection Statement.

60. The Planning Commission did not provide any basis or findings or point to any evidence in support of the numerous waivers and accommodations it had to have made to approve the final site plan.

61. The Commission then opened the floor to the concerned audience but limited them to three minutes per speaker. The Riegs and Robin Wangler appeared and stated what objections they could within the three minutes allotted. The Riegs' and Wanglers' attorney also spoke on their behalf in objection to the site plan and the Ordinance 2022-40. The attorney first confirmed the Planning Commission members received the written Objection Statement but was only given three minutes to review the objections contained therein.

62. While Seville might stand to gain substantial amounts of money from direct and indirect tax revenue generated by the Flint Development, the burdens necessary to achieve that benefit, in violation of the law, are being shouldered solely by the Plaintiffs and others living in the shadow of this one million square foot plus and 270 truck loading docks industrial monster that will house a 24 hour 7 days a week warehousing and distribution operation.

63. The citizens of Seville, Plaintiffs included, have objected to Ordinance 2022-40 and the Flint Development site plan at every opportunity, to no avail and with no explanation.

64. As explained further below, the direct and proximate result of Seville's enactment and application of Ordinance 2022-40 to the Flint Development, is that Plaintiffs have been denied due process and equal protection under the law as guaranteed by the United States Constitution and the Constitution of the State of Ohio.

65. As a further result of Seville's enactment and enforcement of Ordinance 2022-40, Plaintiffs have been damaged by the lost value in their properties and have incurred litigation costs, expenses, and attorney fees.

66. Plaintiffs' damages are expected to continue into the future.

67. In depriving Plaintiffs of their federally protected rights as described above and further detailed below, Seville has acted with callous and reckless indifference to Plaintiffs.

Page 12 of 23

68. The Plaintiffs' last and only option is judicial intervention. Plaintiffs bring this action on their own behalf, and on behalf of others subject to Ordinance 2022-40 for redress of the violation of the their right to equal protection and due process as guaranteed by both the United States Constitution and the Constitution of the State of Ohio; for a declaration, pursuant to ORC Chapter 2721 of the Ohio Revised Code to obtain a determination of their rights and obligations under and the constitutionality of Ordinance 2022-40; for damages; for injunctive and equitable relief; for punitive damages, costs, litigation expenses and attorney fees; and for all other relief as this Court may deem appropriate.

## COUNT I
## Declaratory Judgment
**(Ordinance 2022-40 is Facially Unconstitutional and Unconstitutional as Applied to the Flint Development)**

69. Plaintiffs incorporate the above statements as though restated herein.

70. A real controversy exists between the parties as to the constitutionality of Ordinance 2022-40. Seville contends the ordinance is constitutional and is relying on it to waive and accommodate Flint Development's flagrant and manifest violations of the requirements and restrictions contained in the Zoning Code §611.01 et seq., governing the Mixed Use Overlay District.

71. A municipality's power to enact zoning ordinances is not unlimited and may only be exercised to the extent that it has been statutorily delegated to them; any regulation, rule, or ordinance that exceeds those powers is invalid and unenforceable.

72. Ordinance 2022-40 constitutes a delegation of legislative authority. It delegates to Planning Commission the authority to arbitrarily, capriciously and despotically grant waivers and accommodations to applicants for uses within the Mixed Use Overlay District which, in effect, gives the Planning Commission the ability to rezone the properties inside the Mixed Use Overlay District and do so without any standards or criteria as to when an accommodation or waiver may be made.

73. Such an improper delegation of authority is itself arbitrary and unreasonable without substantial relation to the public health, safety, morals, or general welfare of the community and because of this Ordinance 2022 – 40 may not be constitutionally applied under any circumstances. Ordinance 2022 – 40 is unconstitutional on its face.

74. This unconstitutional delegation of authority obviates the requirement that any accommodation or waiver be done via the variance process that protects all other neighboring property owners in, or adjacent to, or in the immediate vicinity of other zoning districts.

75. The power to zone or rezone belongs exclusively to the legislative branch and cannot be delegated to an administrative agency; further, an administrative agency cannot rezone property under the guise of a variance, let alone a waiver and accommodation procedure that has no criteria or standards to apply.

76. Zoning ordinances are facially unconstitutional if they do not contain sufficient criteria to guide administrative agencies in the exercise of their discretion granted by such ordinances.

77. Even variances granted by an administrative agency are only proper when the agency follows the standards and guidelines set out by the legislature and the agency records the basis for their decision and supports the same with findings including, but not limited to, a finding of undue hardship and a finding that the variance would not be opposed to the spirit and intent of the underlying zoning.

78. The arbitrary authority granted to Planning Commission under Ordinance 2022-40 does not exist to benefit the public. The arbitrary, capricious and despotic authority granted to Planning Commission under Ordinance 2022-40 exists precisely to circumvent the requirements and restrictions built into Mixed Use Overlay District zoning and to clear the way for the Flint Development. The requirements and restrictions would have otherwise protected the health, safety, and general welfare of those property owners and residents, like the Riegs and the Wanglers, in the vicinity of the Flint Development.

79. It is manifestly obvious the purpose of Ordinance 2022-40 is to allow Planning Commission to obviate the need to meet multiple standards and criteria, including, but not limited to, undue hardship test for a use variances and practical difficulties test for an area variance - standards and criteria for which the Flint Development would never meet.

80. Even if the Ordinance is not facially unconstitutional, it is unconstitutional as applied to this set of facts, this site plan, the Flint Development, and the Flint Property. The Flint Development flagrantly violates nearly every restriction in § 611 of the Zoning Code – the Mixed Use Overlay District.

81. The Planning Commission's approval of the Flint Development final site plan which flagrantly violates the spirit and express purpose of the Mixed Use Overlay District and directly violates nearly every restriction in §611 of the Zoning Code and its approval by Planning Commission is an unconstitutional application of a facially unconstitutional ordinance.

82. Flint has expressed its desire to move rapidly towards construction of the Flint Development.

83. Plaintiffs and others neighboring the Flint Development will be especially and uniquely damaged if the Planning Commission's approval proceeds and a zoning certificate is issued to Flint for the Flint Development.

84. The controversy is justiciable in character; a judicial order is needed to declare Ordinance 2022-40 unconstitutional on its face and as applied to Flint Development.

85. Speedy relief is necessary to preserve the rights of the Plaintiffs.

86. Resolution of the controversy is needed immediately and will have a direct and immediate impact on the parties.

87. Plaintiffs have statutory standing pursuant to O.R.C. 2721.03 as persons "whose rights... are affected by a... municipal ordinance" to have the validity and constitutionality of Ordinance 2022-40 determined.

88. Plaintiffs have common-law standing to bring a declaratory judgment action against Seville as aggrieved parties and by being directly affected by the facially unconstitutional and unconstitutionally applied Ordinance 2022-40.

89. Plaintiffs are entitled to litigation costs, expenses, and attorney fees necessary to obtain this declaratory relief.

## COUNT II
### (Injunction)

90. Plaintiffs incorporate the above statements as though restated herein.

91. Plaintiffs and the Rieg Residence and Wangler Residence will be especially damaged if Seville issues a zoning certificate and allows the Flint Development to be built.

92. Plaintiffs will prevail on the underlying claim that Ordinance 2022-40 is unconstitutional, whether facially or as applied to the Flint Development, or both.

93. The complete delegation of legislative authority without any guidelines or concerns for community wellbeing is unconstitutional on its face.

94. Plaintiffs and their neighbors will suffer irreparable injury if the construction of the Flint Development is allowed to proceed under its current site plan approved by Planning Commission. There is no adequate remedy at law for the injury that will be suffered if the Flint Development site plan is effectuated.

95. The Planning Commission's approval of the Flint Development poses an imminent threat, which would result in special and unique damages to the Plaintiffs and to other residents and property owners in the vicinity of Flint Development, and an injunction is needed to protect the Rieg Residence, Wangler Residence, the Plaintiffs, and others similarly situated in the vicinity from this unique damage.

96. No third parties will be unjustifiably harmed if the injunction is granted.

97. The public interest will be served by the injunction.

## COUNT III
### (Violations of Procedural Due Process, Substantive Due Process, and Equal Protection Rights)

98. Plaintiffs incorporate the above statements as though restated herein.

99. The unconstitutional delegation of authority as described above obviates the requirement that any accommodation or waiver be done via the variance process that protects all other neighboring property owners in, or adjacent to, or in the immediate vicinity of other zoning districts. The same violates the Plaintiffs' procedural and substantive due process rights and violates their right to equal protection under the law.

100. As well as violating the Plaintiffs' fundamental rights, the unconstitutional delegation of authority as described above is so direct, so flagrant, and so manifestly improper it shocks the conscience. Additionally, the application of Ordinance 2022-40 to the Flint Development by Planning Commission to approve a site plan that allows violations of the restrictions contained in §611 of the Zoning Code/Mixed Use Overlay District, violates fundamental rights of the Plaintiffs and such violations are so flagrant, and so manifestly improper it shocks the conscience.

101. Plaintiffs and the community at large have been injured because their constitutional right of referendum, otherwise available to them upon a proper legislative rezoning of the Flint Property, has been denied by the despotic rule of the Planning Commission as an administrative authority with the unconstitutionally delegated power of rezoning the Flint Property.

102. Even if Ordinance 2022-40 is not facially unconstitutional, it is unconstitutional as it has been applied to the Flint Development given the numerous waivers of and accommodations to the restrictions contained in §611 of Seville's Zoning Code approved by Planning Commission allowing numerous and flagrant violations of these provisions. Such approval is, in effect, a re-zoning of the property without proper procedure, stripping the Plaintiffs of their due process rights to object and appeal to the Flint Development within a proper variance process guided by standards and criteria necessary to obtain the variance.

103. The denial of the variance process for the Plaintiffs as the proper process to state their objections also denies them equal protection under the law.

104. The regulations for the Mixed Use Overlay District were put in place to protect the "adjacent areas from any adverse effects" as well as maintain the "scale and character of the Village of Seville."

105. These regulations were put in place to protect the public's interest.

106. Planning Commission's authority under Ordinance 2022-40 to arbitrarily grant waivers and accommodations amounts to an improper delegation of authority to rezone property. This deprives Plaintiffs, and the public in general, the right to engage in the legislative process and the referendum procedures that could otherwise be used to revoke the rezoning. This amounts to another denial of Plaintiffs' due process rights and equal protection under the law.

107. The acts of Seville as described above are separately and taken together, acts in violation of the Plaintiffs' procedural and substantive due process rights, and it denies them equal protection under the law.

108. Plaintiffs request an award of damages for the violation of their procedural and substantive due process rights, loss in value of their property, litigation costs, expenses, and attorney fees related to the administrative process and this litigation, and other legal or equitable relief as appropriate.

## COUNT IV
### (Violation of 42 U. S. C. §1983)

109. Plaintiffs incorporate the above statements as though restated herein.

110. The impermissible violations of Plaintiffs' constitutional rights alleged herein arose as a direct consequence of the official policy and custom of Seville as expressed in Ordinance 2022-40 and as carried out by Seville's Zoning Inspector, its Planning Commission, and its Council.

111. Seville's conduct in enacting and enforcing Ordinance 2022-40 and its other unconstitutional ordinances, policies, and customs under color of law was and is in violation of 42 U. S. C. §1983.

112. The Plaintiffs have no adequate remedy at law to secure relief from the application of Ordinance 2022-40.

113. In violating Plaintiffs' federally protected rights, Seville has acted with reckless and callous indifference to the federally protected rights of Plaintiffs.

114. As a direct and proximate result of the Seville's violation of Plaintiffs' constitutional rights, Plaintiffs have been damaged, and will continue to suffer damage, including, but not limited to, loss in value of their property, and litigation costs, expenses and attorney fees as alleged herein both related to their engagement in the administrative process and to which they are entitled under 42 U. S. C. §1988.

## COUNT V
### (Violation of the Ohio Constitution)

115. Plaintiffs incorporate the above statement as if restated herein.

116. To the extent the Village's enactment and enforcement of Ordinance 2022-40 violates Plaintiff's rights under the United States Constitution, it likewise violates Plaintiffs' rights under Article I, Sections 1, 2, and 16 of the Constitution of the State of Ohio.

117. As a direct and proximate result of the Seville's violation of Plaintiffs' constitutional rights under the Ohio Constitution, Plaintiffs have been damaged, and will continue to suffer damage, including, but not limited to, loss in value of their property, and litigation costs, expenses and attorney fees as alleged herein.

**WHEREFORE**, Plaintiffs request the Court grant them relief and judgment as follows:

1. **Count I re**: Declaratory Judgment:

   a. For a declaratory judgment that Ordinance 2022-40 is unconstitutional on its face and as applied to the Flint Development and is a violation of the Plaintiffs' right to equal protection under the law and for each of these reasons, separately and together, Ordinance 2022-40 is therefore void;

   b. For their litigation costs, expenses, attorney fees and such other legal and equitable relief as the Court may find just and proper.

2. **Count II re**: Injunction:

   a. For an injunction preventing Seville from enforcing Ordinance 2022-40 and issuing any zoning certificate thereunder, including, but not limited to, a zoning certificate for the Flint Development based upon its current site plan;

b. For their litigation costs, expenses, attorney fees and such other legal and equitable relief as the Court may find just and proper.

3. **Count III re**: Violation of procedural and substantive due process and equal protection rights:

    a. Loss in value of their property;

    b. For their litigation costs, expenses, attorney fees in this litigation and in the related administrative process and such other legal and equitable relief as the Court may find just and proper.

4. **Count IV re**: Violation of 42 U. S. C. §1983:

    a. Loss in value of their property;

    b. Punitive damages;

    c. For their litigation costs, expenses, attorney fees in this litigation (under 42 U. S. C. §1988) and in the related administrative process, and such other legal and equitable relief as the Court may find just and proper.

5. **Count V re**: Violation of the Ohio Constitution:

    a. Loss in value of their property;

    b. For their attorney fees, litigation expenses, court costs and such other legal

and equitable relief as the Court may find just and proper.

Respectfully submitted,

Jeffrey T. Witschey, Esq. #0059171
Karan A. Moss, Esq. #0087728
**Witschey Witschey & Firestine Co., LPA**
405 Rothrock Road, Suite 103
Akron, Ohio 44321
Phone:  330-665-5117
E-mail:  jtw@witscheylaw.com
        kam@witscheylaw.com
Fax: 330-665-7615
**ATTORNEYS FOR PLAINTIFFS**

**Jury Demand**

Plaintiffs' demand a jury for those issues and causes of action so triable.

Jeffrey T. Witschey, Esq.

cli.rieg.seville.pleadings.complaint-1

Page **23** of **23**





Tx:8147838

**2018OR010384**

**COLLEEN M. SWEDYK**
**MEDINA COUNTY RECORDER**
**MEDINA, OH**
**RECORDED ON**
**05/17/2018 3:03 PM**

**REC FEE: 44.00**
**PAGES: 5**
**DOC TYPE: SURV**

# MEDINA COUNTY RECORDER

# COLLEEN M. SWEDYK

(DO NOT REMOVE THIS COVER SHEET.
THIS IS THE FIRST PAGE OF THIS DOCUMENT)

This Conveyance has been examined and the Grantor has complied with Section 319.202 of the Revised Code. 5/17/18

FEE $ 374.70

EXEMPT

Michael E. Kovack, Medina County Auditor

SURVIVORSHIP DEED [Wodzak, Lewis & Lewis to Rieg.jsd]

# KNOW ALL MEN BY THESE PRESENTS

That, we, **KAREN C. WODZAK** [married],

**DALE H. LEWIS** [married]

and

**KENNETH S. LEWIS** [married]

the Grantors

who claim(s) title by or through instrument(s), recorded in Document Nos. 2018OR004421 and 1999OR029325, Medina County, Ohio, for valuable consideration paid, *Grant(s), (Covenants, if any)*, to the Grantees:

**BRIAN M. RIEG** and **MICHELLE L. RIEG**
[husband and wife]

for their joint lives, remainder to the survivor of them

whose TAX MAILING ADDRESS is:

P.O. Box 11733

Newark NJ 07101

the following described **Real Property**: (Description of land or interest therein and encumbrances, reservations, and exceptions, if any):

*Situated in the State of Ohio, County of Medina, and in the Village of Seville:*

*And known as being the whole of SEVILLE VILLAGE Lot No. 728, as shown by the Plat Volume 22, Page 21.*

PERMANENT PARCEL NUMBERS:  012-21A-05-018

PROPERTY ADDRESS:          148 Royal Crest Drive
                           Seville, OH 44273

And we, the said Grantors, **KAREN C. WODZAK, DALE H. LEWIS** and **KENNETH S. LEWIS**, do for ourselves and our heirs and assigns, covenant with the said Grantees, their heirs and assigns, that at and until the ensealing of these presents, we are well seized of the above described premises, as a good and indefeasible estate in FEE SIMPLE, and have good right to bargain and sell the same in manner and form as above written and that the same is free and clear from all liens and encumbrances whatsoever, except restrictions and conditions of record, if any; easements (however created) and encroachments as do not materially and adversely affect the use or value of the property; zoning ordinances, if any, which may have been imposed thereon; and taxes and assessments, both general and special, not yet due and payable, and thereafter, which the Grantees assume and agree to pay; and that we will warrant and defend said premises, with the appurtenances thereunto belonging, to the said Grantees, their heirs and assigns, against all lawful claims and demands whatsoever except as hereinbefore provided.

And for valuable consideration, I, **KENNETH WODZAK**, spouse of Grantor **KAREN C. WODZAK**, do hereby remise, release and forever quit-claim unto the said Grantees, their heirs and assigns, all of my right and expectancy of Dower in the above described premises.

*WITNESS* our hands this ___16___ day of ___May_____, 2018.

_____
KAREN C. WODZAK

_____
KENNETH WODZAK

*STATE OF OHIO*         )
                       ) ss.
*COUNTY OF* __Medina__  )

    *Be It Remembered*, that on the ___16___ day of ___May_____, 2018, before me, the subscriber, a Notary Public in and for said county, personally came Grantor, **KAREN C. WODZAK**, and his spouse, **KENNETH WODZAK**, who acknowledged the signing thereof to be their voluntary act and deed.

    *In Testimony Whereof,* I have hereunto subscribed my name and affixed my notarial seal on the day and year last aforesaid.

_____
NOTARY PUBLIC                (Seal)

This instrument prepared by:
John J. Wargo, Jr.
**WARGO AND WARGO**
30 Park Street
Berea, OH 44017
Tel. (440) 234-0662

Jennette Tumney
Resident Medina County
Notary Public, State of Ohio
My Commission Expires:
5/25/20

*WITNESS* our hands this 16 day of May , 2018.

*Dale H. Lewis*
DALE H. LEWIS

STATE OF OHIO            )
                         ) ss.
COUNTY OF Medina )

   *Be It Remembered*, that on the 16 day of May , 2018, before me, the subscriber, a Notary Public in and for said county, personally came Grantor, **DALE H. LEWIS**, who acknowledged the signing thereof to be his voluntary act and deed.

   *In Testimony Whereof,* I have hereunto subscribed my name and affixed my notarial seal on the day and year last aforesaid.

NOTARY PUBLIC                (Seal)

This instrument prepared by:
John J. Wargo, Jr.
**WARGO AND WARGO**
30 Park Street
Berea, OH 44017
Tel. (440) 234-0662

Jennette Tumney
Resident Medina County
Notary Public, State of Ohio
My Commission Expires: 5/25/20

And for valuable consideration, I, **RENEE LEWIS**, spouse of Grantor **KENNETH S. LEWIS**, do hereby remise, release and forever quit-claim unto the said Grantees, their heirs and assigns, all of my right and expectancy of Dower in the above described premises.

*WITNESS* our hands this __16__ day of ___May_____, 2018.

_Kenneth S Lewis_
**KENNETH S. LEWIS**

_Renee Lewis_
**RENEE LEWIS**

*STATE OF OHIO*              )
                             ) ss.
*COUNTY OF* __Medina__       )

   *Be It Remembered*, that on the __16__ day of ___May_____, 2018, before me, the subscriber, a Notary Public in and for said county, personally came Grantor, **KENNETH S. LEWIS** and her spouse, **RENEE LEWIS**, who acknowledged the signing thereof to be their voluntary act and deed.

   *In Testimony Whereof,* I have hereunto subscribed my name and affixed my notarial seal on the day and year last aforesaid.

_____ (Seal)
NOTARY PUBLIC

This instrument prepared by:
John J. Wargo, Jr.
**WARGO AND WARGO**
30 Park Street
Berea, OH 44017
Tel. (440) 234-0662

NOTARIAL SEAL
STATE OF OHIO

Jennette Tumney
Resident Medina County
Notary Public, State of Ohio
My Commission Expires:
5/25/20

**Exhibit "A" - Legal Description**
For File: 66144709

Situated in the Township of Guilford, County of Medina and State of Ohio: And known as being a part of Guilford Township Section 15 further bounded and described as follows: Beginning at a drill hole found at the intersection of the North line of Lot 15 and the centerline of C.H. 93;

Thence South 0 degrees 52' 51" West, along the centerline of C.H. 93, 502.14 feet to a point being the principal place of beginning of the parcel described herein;

Thence South 0 degrees 52' 51" West, along the centerline of C.H. 93, 500.0 feet to a point being the Northeast corner of land now or formerly in the name of Ralph and Hazel Van Nostran;

Thence North 89 degrees 14' 15" West, along the North line of said Van Nostran land, 788.95 feet to an iron pin found at the Southeast corner of land now or formerly in the name of Roger W. Easton;

Thence North 0 degrees 30' 00" East, along the East line of said Easton parcel, 491.75 feet to an iron pin set;

Thence South 89 degrees 50' 04" East, 792.28 feet to the principal place of beginning and containing therein 9.000 acres of land as surveyed in August 1978 by Charles A. Rolling, Registered Surveyor #5569.

Parcel No.: 008-16A-34-002

18594-2



EXHIBIT

C

**2022OR020884**

NO TRANSFER NECESSARY
MIKE KOVACK
MEDINA COUNTY AUDITOR
10/3/2022 JR

DESCRIPTION APPROVED

MEDINA COUNTY TAX MAP DEPARTMENT

By MM  Date: 10/3/2022

**LINDA HOFFMANN**
**MEDINA COUNTY RECORDER**
**MEDINA, OH**
**RECORDED ON**
**10/03/2022 10:30 AM**

**REC FEE: 58.00**
**PAGES: 5**
**DOC TYPE: QC**

| | |
|---|---|
| Title: | QUIT CLAIM DEED |
| Date: | September 26th 2022 |
| Grantor: | PJS PROPERTIES. LLC, and STONE BROTHERS FARMS. LLC. each an Ohio limited liability company, as tenants in common |
| Grantor's Address: | 8640 River Styx Road Wadsworth, Ohio 44281 |
| Grantee: | NEO COMMERCE CENTER LLC, a Delaware limited liability company |
| Grantee's Address: | c/o Flint Development 3515 West 75th Street. Suite 103 Prairie Village, Kansas 66208 |
| Prior Instrument Reference: | Document No. 2021OR033859; and Document No. 2021OR036214. |
| Parcel Number(s): | 012-21A-04-048; 012-21A-05-098; and 012-21A-05-099. |
| Legal Description: | See Exhibit A |

**This Instrument Prepared By, and After Recording Return To:**

Robert C. Skidmore, Esq.
Skidmore & Hall Co. LPA
748 North Court Street
Medina. Ohio 44256

First American Title Insurance
National Commercial Services
NCS.____1099736____CO

B5238719.4

## QUIT CLAIM DEED

This QUIT CLAIM Deed (this "*Deed*") is made on this 26th day of September, 2022. PJS PROPERTIES, LLC AND STONE BROTHERS FARMS, LLC. each an Ohio limited liability company, as tenants in common, whose address is 8640 River Styx Road, Wadsworth, Ohio 44281 ("*Grantor*"), for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby grants, assigns and quit claims to NEO COMMERCE CENTER LLC, a Delaware limited liability company ("*Grantee*"), whose tax mailing address is 3515 West 75th Street, Suite 103, Prairie Village, Kansas 66208, all right, title and interest owned, claimed or held by Grantor in and to the "*Minerals*" (meaning all right, title and interest now owned, or hereafter acquired, by Grantor in and to minerals and mineral rights, oil and gas and oil and gas leases and other rights, and coal and coal rights, which are on, in, under or appurtenant to the Property (defined below)) and all rights of Grantor to enter upon the surface of all or any portion of the Property for any purpose in connection with the development, extraction, utilization or other use of the Minerals, to the extent located on, underlying, appurtenant, or related to the real property described in Exhibit A attached hereto and incorporated herein by this reference (the "*Property*"), which attachment is incorporated herein and made a part hereof by this reference.

TO HAVE AND TO HOLD the above-described property, together with all and singular the rights, appurtenances thereto in any wise belonging unto the said Grantee, herein, its successors and assigns.

WITHOUT APPURTENANCES, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, AND ONLY TO THE EXTENT THE RIGHTS ARE RELATED TO THE PROPERTY.

[Signature Page Immediately Follows]

KS238719.4

IN WITNESS WHEREOF, Grantor has executed this Deed as of the date first set forth above.

**GRANTOR:**

**PJS PROPERTIES, LLC,**
an Ohio limited liability company

By: _Phillip Stac_

Name: _Phillip L. Stac_

Title: _Manager_

STATE OF _Ohio_ )
) ss
COUNTY OF _Medina_ )

The foregoing instrument was acknowledged before me this 23ʳᵈ day of _September_, 2022, by _Phillip L. Stac_, the _Manager_ of PJS PROPERTIES, LLC, an Ohio limited liability company, on behalf of the limited liability company.

**ROBERT C. SKIDMORE**
Attorney at Law
Notary Public, State of Ohio
My Commission Has No
Expiration Date.
;Per ORC 147.03}

Notary Public

My commission expires: _____

[SIGNATURE PAGE TO QUIT CLAIM DEED]

60052489.2

**STONE BROTHERS FARMS, LLC,**
an Ohio limited liability company

By: _Phillip L. Sto_

Name: _Phillip L. Stine_

Title: _Authorized Signer_

STATE OF _Ohio_ )

) ss

COUNTY OF _Medina_ )

The foregoing instrument was acknowledged before me this 28th day of _September_, 2022, by
_Phillip L. Stone_, the *k * of STONE BROTHERS FARMS, LLC, an Ohio limited liability
company, on behalf of the limited liability company.

k k Authorized Signer

ROBERT C. SKIDMORE
Attorney at Law
Notary Public, State of Ohio
My Commission Has No
Expiration Date.
(Per ORC 147.03)

_____
Notary Public

My commission expires: _____

[SIGNATURE PAGE TO QUIT CLAIM DEED]

G0052489.2

## EXHIBIT A

### LEGAL DESCRIPTION

**Parcel A:**

Situated in the Village of Seville, County of Medina and State of Ohio: And being the whole of Seville Village Lot 1419 as platted in Document No. 2021PL000023 in the Medina County Recorder's Records, be the same more or less, but subject to all legal highways.

Permanent Parcel No. 012-21A-04-048

**Parcel B:**

Situated in the Village of Seville, County of Medina, and State of Ohio, and known as being the whole of Seville Village Lot 1324 as shown in Plat Document No. 2015PL000037 in the Medina County Recorder's Records.

Permanent Parcel No. 012-21A-05-099

**Parcel C:**

Situated in the Village of Seville, County of Medina and State of Ohio: And being the whole of Seville Village Lot 1081.

Permanent Parcel No. 012-21A-05-098

Exhibit A (Legal Description)

8523871914



**VILLAGE OF SEVILLE**
**ORDINANCE NO. 2022-40**

AN ORDINANCE OF THE VILLAGE OF SEVILLE, MEDINA COUNTY, OHIO AMENDING THE SEVILLE VILLAGE ZONING CODE SECTIONS 609, 610, AND 611, AND DECLARING AN EMERGENCY.

WHEREAS, upon recommendation of the Seville Planning and Zoning Commission, Village Council desires to update the Village Zoning Code to allow for new building height and performance standards in the Industrial District, the Industrial Park District and for industrial uses in the Mixed Use Overlay District, thereby recognizing new industry building standards since the adoption of the zoning code to maximize potential for economic development within the Village; and

WHEREAS, upon recommendation of the Seville Planning and Zoning Commission, Village Council desires to update the Village Zoning Code to permit the Seville Planning and Zoning Commission to approve reasonable waivers and accommodations in the Zoning Code development standards and design principals for development in a Mixed Use Overlay District during the site plan review process.

NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE VILLAGE OF SEVILLE, MEDINA COUNTY, OHIO, THAT:

1.  Section 609.03(G) of the Seville Village Zoning Code is hereby amended as follows:

    Maximum Building Height – 55 feet if the building has a sprinkler system.

2.  Section 610.05(G) of the Seville Village Zoning Code is hereby amended as follows:

    Maximum Building Height – 55 feet if the building has a sprinkler system.

3.  Section 611.03(G)(7) of the Seville Village Zoning Code is hereby amended as follows:

    Maximum Building Height – 55 feet if the building has a sprinkler system.

4.  Section 611.05 of the Seville Village Zoning Code is hereby amended as follows:

    No building permit may be issued without first adhering to the site plan review process set forth in Article X, Site Plan Review. The standards in Article X shall also be considered for MU Overlay District reviews; however, the standards and principles in this Section shall take precedence in the instance of any conflicts. During the site plan review process the Planning and Zoning Commission may approve reasonable waivers and accommodations in the Zoning Code development standards and design principals necessary for the reasonable development of the Mixed Use Overlay District.

5. Section 611.07(B) of the Seville Zoning Code is hereby amended as follows:

There shall be no production of noise at any MU Overlay District boundary of any use in excess of the average intensity of such particular use as measured by commercially reasonable industry standards.

6. The remainder of the Seville Village Zoning Code not herein amended shall remain in full force and effect.

7. That it is found and determined that all formal actions of this Council concerning and relating to the passage of this Ordinance were taken in conformance with applicable open meetings laws and that all deliberations of this Council and of any committees that resulted in those formal actions were in compliance with all legal requirements including any applicable open meeting requirements.

8. This Ordinance is hereby declared to be an emergency measure necessary for the preservation of the public peace, health, safety and welfare of the Village of Seville and its inhabitants. The specific reason for the emergency being the immediate need to update the Village zoning code to allow for new standards in the Industrial District, the Industrial Park District and for industrial uses in the Mixed Use Overlay District, thereby recognizing new industry building and design standards since the adoption of the zoning code to maximize potential for economic development within the Village; therefore, this Ordinance shall take effect immediately from and after its passage.

Passed: June 13, 2022

_____
Carol Carter, Mayor

_____
James Carrick, Fiscal Officer



**EXHIBIT**

**E**

**VILLAGE OF SEVILLE**

WRITTEN STATEMENT IN OPPOSITION TO FLINT DEVELOPMENT INDUSTRIAL COMPLEX

Submitted on behalf of Michelle Rieg and Scott Wangler
(September 19, 2022 Planning Commission Meeting)

**Introduction:** The proposed Flint Development Industrial Complex flagrantly violates the spirit and express purpose of the Mixed-Use Overlay District in Seville's Zoning Code Section 611 (hereinafter "MU District"), decimates the underlying R-1 Residential Zoning and seeks to accomplish all of this through unreasonable waivers of zoning code requirements and accommodations to those requirements under a recent zoning code amendment that is, itself, unconstitutional and invalid, and violative of the rights of other property owners in the area of the proposed development.

**Argument:** The Village of Seville 2019 Comprehensive Development Plan (Comprehensive Plan) identified the need for mixed use overlay district zoning in the Village of Seville. The Flint Development lies within area #2 identified on Page 32 of the Comprehensive Plan. While the overlay district did apply to a strip of commercially zoned property along Rt. 3, most of the land in the Flint Development is zoned R-1 low-density residential zoning. The description of mixed-use overlay districts on page 35 of the Comprehensive Plan directs that: "Mixed Use Overlay Districts can serve both local and regional industrial and commercial needs, while reflecting the scale and character of the Village of Seville **in a manner that protects adjacent areas from any adverse effects**." (Emphasis added) More specifically, the applicable mixed-use district is identified in Chapter 5, Section A, Subsection 5 on page 45 of the Comprehensive Plan. Here, the intention of creating a mixed-use zoning for the Village of Seville is stated as:

> The vision of this type of zoning [mixed use] is to **create a community of uses that overlap.** These uses, commercial, light industrial, and residential should **complement each other, but not make a major change to the underlying zoning.** For example, along the east side of the Route 3 corridor north of Greenwich Road [referring to the Flint Development Land], the development of retail and offices could be complemented by high density residential apartment/condominium living over the retail and office areas. Industrial could be developed further to the east. **Each component complements the other while not relying heavily on a single use.**

Subsection 5 of the comprehensive plan finished by stating: "The zoning code should be revised to further clarify the intended use of this type of zoning in the village."

The Code was so revised. Section 611 of the zoning code "Mixed-Use Overlay District (MU)" states in subsection 611.01, the very first provision, the purpose of the MU District. It states:

> The purpose of this district is to require a mix of at least two industrial retail, service, office, high density housing and public activities to coexist in a manner that **reflects human scale and emphasizes pedestrian orientation,** taking advantage of the vitality that mixed uses can bring to a community. Mixed Use Overlay Districts can serve both local and regional industrial and commercial needs, while reflecting the scale and character of the Village of Seville **in a manner that protects adjacent areas from any adverse effects.**

The next 12 pages of the zoning code then sets forth restrictions which advance the spirit of the MU and its

1 | P a g e

express purpose carefully restricting such developments ensuring the development creates a community of overlapping uses, does not make major changes to the underlying zoning, reflects the character of the Village of Seville, and ensures the protection of adjacent areas from any adverse effects. The proposed Flint Development flagrantly violates both the spirit of the MU overlay and its expressly written purpose. The development brazenly and manifestly violates nearly every applicable requirement of the Zoning Code's MU District, Section 611.

The Village of Seville and Flint Development might believe the provisions of Section 611 may be waived or otherwise accommodated given the recent passage of Ordinance 2022-40 which amended Subsection 611.05. This Subsection states: "During the site plan review process the Planning and Zoning Commission may approve reasonable waivers and accommodations in the Zoning Code development standards and design principles necessary for the reasonable development of the Mixed-Use Overlay District". This language provides no legitimate basis for this development. First, none of numerous blatant violations are in any way reasonable waivers or accommodations. They are many, they are direct, and they are flagrant violations which decimate the spirit and express purpose of the MU District and blatantly disregard the interests of those owning neighboring properties. Second, and just as important, this recent amendment allowing "reasonable waivers and accommodations" is not constitutional and violates the substantive and procedural due process rights of neighboring and nearby property owners. This language places in the Planning Commission arbitrary, capricious, and despotic zoning control over the land underlying the MU District. Except for an ambiguous reference to what some planning commission at some time might find a reasonable waiver or accommodation, it does not provide any standards or criteria to apply in making its waiver or accommodation decisions.

As to every other zoning district in the village, to waive or amend a district requirement, a variance is needed. For the protection of neighboring properties, the Seville Village Zoning Code and Ohio law requires strict compliance with numerous factors before a variance may be granted. The bar is high. These factors include the following for an area variance: (1) whether the property will yield a reasonable return or whether there can be a beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood will be substantially altered or whether adjoining properties will suffer a substantial detriment to the proper future development and rights and as a result of the variance; (4) whether the variance will adversely affect the delivery of governmental services; (5) whether the property owner purchase the property with knowledge of the zoning restrictions; (6)whether the property owners need for the variance can be resolved through some method other than a variance; (7) whether the spirit and intent of the ordinance will be observed and substantial justice done by granting the variance; and (8) whether the property in question has unique or exceptional circumstances or conditions that do not generally apply to other properties in the vicinity and within the same district. The factors for a use variance are even more difficult requiring the showing of a substantial hardship and observance of the spirit of the zoning ordinance [Section 1406 – Area Variance and Use Variance requirements]. It is certain to say the Flint Development would never receive variances in as many, as varied, as direct, and as egregious ways as is required here. However, it appears the Planning and Zoning Commission is now poised to find the "reasonable waiver and accommodations" to the MU District Zoning that is needed to allow this development here. Adjoining property owners in every other area in the Village of Seville are protected by the variance procedures and requirements of the Zoning Code. Those owning properties that are neighboring a MU District are selectively denied the protection that other property owners are given in the variance procedures of the zoning code. Our Constitution won't have it and my clients will be bringing constitutional attack upon the recent amendment that allows such arbitrary and despotic zoning.

The fact that Ordinance 2022-40 is unconstitutional will be left to the courts in our planned declaratory judgment action. However, if planning commission approves the current Flint Development plan, we will have overwhelming evidence for an administrative appeal as a matter of law. There exists an overwhelming manifest weight of evidence supporting the denial of this development. This evidence includes but is not limited to the following:

(1) Section 611.01- The Flint Development does not reflect human scale and does not emphasize pedestrian orientation. The Flint Development does not reflect the scale and

character of the Village of Seville in a manner that protects adjacent areas from adverse effects. It does not provide overlapping complimentary uses while maintaining the essential character of the underlying zoning, namely R-1 low density residential. Instead, it relies heavily upon a single industrial use over a large majority of the land.

(2) Section 611.02(B) — The Flint Development attempts to create an MU District with a development plan that is not in conformance with the provisions of Section 611 Mixed Use Overlay District.

(3) Section 611.02(E) – The MU District is not being developed in conformance with a site plan that meets the requirements of Article X of the Village of Seville Zoning Code. For instance, in the application materials there does not appear to be any elevation drawings showing the facades of the buildings, materials and architectural designs used – these are documents absolutely essential to establish the criteria needed to ensure compliance with the MU District purpose and provisions. See Zoning Code Section 1003(B)(4). The sound study submitted does not prove the landscaping design provides "the maximum possible … auditory privacy for surrounding properties and occupants." Section 1003(B)(6). In fact, it shows the exact opposite, indicating sound levels at more than twice those generated from the neighboring properties. Likely this is the reason for an additional amendment quietly imbedded in Resolution 2022-40 amending Section 611.07(B) of the MU District eliminating auditory protection to neighboring property owners if the developer can show the use will not exceed average intensities for that particular use. More on this later, suffice to note for now, however, that Section 1003(B)(6) of the Zoning Code was not amended, and this plan violates it.

(4) Section 611.06(A)(1) – the site plan does not include the entire MU District; it does not include a designation of the actual use of each building in the mixed-use plan; a mixture of uses on individual parcels and in individual buildings has not been accomplished.

(5) Section 611.06(A)(2) -The buildings are not designed to respect the street context; do not create street walls; and they do no respect or create view corridors.

(6) Section 611.06(A)(3) – The buildings and sites are not designed to emphasize pedestrian scale, human scale architecture and landscaping while avoiding large expanses of paved areas; the buildings are large, featureless, and monotonous.

(7) Section 611.06 (A)(4) - the sides of the buildings open to view do not display a level of architectural quality expected in a mixed-use district. They are not subdivided and proportioned using features such as windows, entrances, arcades, awnings, or other such features.

(8) Section 611.06(A)(5) – The plan includes plain monolithic structures with long monotonous walls which are prohibited. There are no massing configurations or variety of wall planes.

(9) Section 611.06(A)(6) – The buildings do not incorporate design elements for each 20 horizontal feet, such as changes in color or texture, projections, recesses, and reveals, arcades, or pergolas providing pedestrian interest that subdivide the wall into human scale proportions. No large windows permitting views of building interiors or display windows are included.

(10) Section 611.06(A)(7) - the building façades do not have highly visible customer service

entrances that feature canopies, overhangs, arcades, distinctive roof forms, arches, display windows, or landscaped features. Primary entrances do not face streets on which they are located.

(11) Section 611.06(A)(8) - the buildings do not have well-defined roof lines with attention to architectural detail. The roofs are not at all consistent the prevailing pattern of roofs in the area surrounding and within the District.

(12) Section 611.06(B)(1) – The proposed buildings are not shown to be made from the materials specified in the regulations. (Brick, masonry, stucco, wood, fiber cement siding, wood shingle, wood siding, or cultured stone)

(13) Section 611.06(C)(1) – No circulation system designed to efficiently facilitate traffic flow, yet designed to discourage speeds and volumes that impede pedestrian activity and safety exists. The traffic impact study itself is premised from a warehouse use and not a HUB Distribution Warehouse which generates 3 times the amount of traffic. This is according to correspondence and material provided to Seville by an ODOT representative.

(14) Section 611.06(C)(2) – No traffic calming devises or techniques are included in the plan.

(15) Section 611.06(C)(5) — There is no indication that consideration has been given to adequate site distance at intersections.

(16) Section 611.06(D)(1) - No coordinated pedestrian system has been provided throughout the development. It is a self-contained not community styled development. The uses are not overlapping or complimentary. If anything. the warehouse use is siloed, it effects are not.

(17) Section 611.06(D)(3) – No continuous sidewalks are provided between primary entrances to buildings. In fact, there are no sidewalks anywhere.

(18) Section 611.06(D)(4) – No decorative sidewalks are provided at intersections.

(19) Section 611.06(D)(5) – No street furniture or other amenities are provided.

(20) 611.06(0)(6) – No open and public space is provided. 20% required.

(21) Section 611.06(E)(2) – No interior landscaped island are shown. The parking is not divided into groupings.

(22) Section 611.06(F)(2) – No year-round visual barrier between the site and any adjacent single family uses are shown.

(23) Section 611.06(F)(3) – Entryways do not appear to be planted with ornamental plant materials, flowering shrubs and ground cover.

(24) Section 611.06(G)(I) – No streetscape plan exists

(25) Section 611.06(G)(2) – The design of streets, pedestrian ways, landscaping, lighting, and street furniture is not coordinated and integrated.

(26) Section 611.06(G)(3) – Streets and driveways are not compatible with pedestrian ways and do not encourage a pedestrian friendly environment. In fact, there are no streets. Just access ways and parking lots.

(27) 611.06(G)(4) – No benches, seating, trash receptacle, bike racks, lighting fixtures or tree grates are shown

(28) 611.06(H)(1) – Service areas and mechanical equipment are not shown on plans.

(29) 611.06(H)(2) – Plans do not indicate service areas and mechanical equipment are

screened from public view.

(30) 611.06(1) - No master sign plan exists.

(31) 611.06(J)(I) - No lighting plan exists.

(32) 611.06(K) – No obscuring fence wall or solid hedge along residential areas is shown

(33) 611.07(B) – Originally this Section stated: "There shall be no production of noise at any MU Overlay District boundary of any use in excess of the average intensity of street and traffic noise in the adjacent area." A provision in ordinance 2022-40 changes this to now state: "There shall be no production of noise at any am you overlay District boundary of any use in excess of the average intensity of such particular use as measured by commercially reasonable industrial standards." This appears to be a direct handout to the developer and violates the goals of ensuring "protection of adjacent areas from any adverse effects." The original provision set on the noise found in the adjacent area as a limitation on the noise that could be emanated from the MU District. Section 611.07 (B) now favors the developer instead of protecting the surrounding property owners. Th new provision literally provides no protection whatsoever for the surrounding properties. The sound study done by Cavanaugh Tocci from August 2022 indicates that the Flint Development will produce sound levels more than twice the acceptable level for neighboring properties. It is only because of the recent amendment that this would be allowed.

Finally, both Ms. Rieg and Mr. Wangler are property owners in the vicinity of this development and both have concluded that their properties will be significantly damaged by the proposed development.

Submitted by: Jeffrey T. Witschey, attorney for Michelle Rieg and Scott Wangler.